FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

99 MAR 10 PM 3: 31

U.S. DISTRICT COURT
N.D. OF ALABAMA

LATRICE WILLIAMS,          )
          Plaintiff;          )
                              )
-vs.-                         )          No. CV-97-P-2466-S
                              )
SUNDANCE REHABILITATION CORP.,  )
          Defendant.          )

ENTERED

MAR 10 1999

### OPINION

The defendant filed a Motion for Summary Judgment on August 28, 1998. After several

continuances, the motion was considered at this court's November 13, 1998 motion docket.

Although the plaintiff filed a request on November 12, 1998 for additional time to secure the services

of an attorney and respond to the summary judgment motion, the court took the motion under

submission based on the submitted materials, neither granting nor denying her request. The court

has received nothing further from the plaintiff since her November 12 filing. For the reasons

expressed herein, the defendant's motion is due to be granted.

### Facts[1]

The defendant provides on-site physical and occupational therapy services at nursing homes

throughout Alabama. The defendant is largely paid by Medicare and must comply with Medicare

billing requirements. The plaintiff was hired by the defendant's Clinical Director, Sandra Cowen,

as a Certified Occupational Therapist Assistant on August 26, 1996. Although she was initially

---

[1]The recitation of "facts" is based on the presented materials viewed in the light most
favorable to the nonmoving party.



assigned to the Greensboro location, she requested and was later transferred to work at three nursing homes in the Birmingham area, closer to her own home.

The defendant had agreed to reimburse the plaintiff for her travel at a rate of thirty-one cents per mile. When the plaintiff submitted her first expense report for travel from her home to Greensboro, her supervisor, Sandra Cowen, wrote her a note indicating that the defendant would reimburse her only for mileage from the company's Birmingham facility to Greensboro. Cowen also directed the plaintiff to use the new mileage forms and to record her odometer readings. The plaintiff never completed the mileage forms for reimbursement. The plaintiff claims that other employees were reimbursed for travel from home to work, but she does not assert that these employees did not have to redo their reports for the new mileage log that went into effect October 1, 1996.

On November 27, 1996 the plaintiff worked at the defendant's Livingston facility during the morning. She was asked to go across the parking lot to Southgate Nursing Home to complete her shift. At Southgate, Cowen directed her to assist a coworker. The plaintiff told the coworker that she had time to treat only two of the three patients that the coworker asked her to see. The plaintiff assumed that she was to treat the same two patients she had seen the day before. The coworker looked for the patient twenty minutes later but could not find her. Although she paged the plaintiff, she received no response. The reporting form for the two patients that the plaintiff saw showed that the plaintiff had spent two fifteen-minute units of time with each patient. Because the times in the reports were inconsistent with the plaintiff's absence, Cowen checked with the patients that the plaintiff allegedly treated. One patient had already been seen earlier in the day and told Cowen that no one had been in her room since then. The other should not have been seen because he had been

2

discharged the day before, thereby becoming ineligible for Medicare reimbursement. The coworker reported the plaintiff's absence to Cowen, but the plaintiff could not be found. As a result of this incident, Cowen fired the plaintiff after a meeting on December 12, 1996. In addition to this incident, the defendant claims that the plaintiff took confidential patient records without permission. The defendant did not discover this until after the plaintiff's termination.

The plaintiff timely filed an EEOC charge, then filed this action on September 15, 1997, alleging race discrimination claims under Title VII. Specifically, the plaintiff claims that white employees were treated with greater respect than black employees and were assigned to treat white patients at better locations than those to which black employees were sent. The plaintiff also alleges that white employees were paid more than black employees, including reimbursement for travel. The plaintiff asserts that she was terminated because of her race and suggested, in her deposition, that patients' records had been altered at Cowen's direction to provide a basis for terminating the plaintiff.

## Analysis

The plaintiff must prove intentional discrimination to succeed on her claim of discriminatory discharge. Because she has presented no direct evidence of discrimination, the court must consider whether any circumstantial evidence proves discrimination.[2] The plaintiff must first state a prima facie case of race discrimination by showing that (1) she belongs to a racial minority; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees of

---

[2] *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 293 (1973).

3

other races more favorably; and (4) she was qualified to do the job.[3] The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.[4] If the defendant meets its burden of production, the plaintiff must then establish that the defendant's proffered reason was a pretext for race discrimination.[5] To establish pretext in a work rule violation case, the plaintiff must show that the employer did not honestly believe that the plaintiff violated the rule.[6]

In this case, the plaintiff's ability to establish a prima facie case is doubtful because she has not identified any similarly situated white employees who engaged in conduct similar to hers but were not terminated. Even if the plaintiff could establish a prima facie case, the defendant has offered a legitimate nondiscriminatory reason for terminating the plaintiff. The defendant believed that the plaintiff left work before her shift was over and claimed work that was not performed. The plaintiff has not offered any evidence to show that the defendant's reasons were pretextual and that discriminatory intent motivated the defendant's decision to terminate her. Although the plaintiff testified in her deposition that she believed records had been altered to support the defendant's decision to fire her, the plaintiff offered no evidence to support these claims. Because the plaintiff has not shown that race played a part in her termination, the defendant's motion for summary judgment as to the discharge claim is due to be granted.

The plaintiff's remaining allegations concern disparate treatment in the terms and conditions

---

[3] *See Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310 (11th Cir. 1998).

[4] *See Burdine*, 450 U.S. at 256-59.

[5] *See McDonnell Douglas*, 411 U.S. at 804.

[6] *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

4

of her employment.  The court can find no evidence indicating discriminatory intent on the

defendant's part.  Although the plaintiff testified that other employees were reimbursed for their

mileage, the plaintiff admitted that she did not submit the new mileage forms for reimbursement.

The plaintiff's remaining claims regarding work assignments, check processing times, and respect

appear to be based on statements the plaintiff overheard from other employees and are not supported

by evidence.

Because the plaintiff has failed to prove intentional discrimination or the existence of genuine

issues of material fact, the defendant's motion for summary judgment is due to be granted.

Dated: _March 10_, 1999

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
        Ms. Latrice Williams
        Mr. David Arendall

5